MISSOURI PACIFIC JOINT PROTECTIVE BOARD, BROTHERHOOD RAILWAY CARMEN OF The UNITED STATES AND CANADA, AFL–CIO, Plaintiff-Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellee.

No. 83–1447.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1983.

Decided March 21, 1984.

---

534

Nina K. Wuestling, Mo. Pacific R. Co., St. Louis, Mo., for defendant-appellee.

Friedman, Weitzman & Friedman, P.C., C. Marshall Friedman, Newton G. McCoy, Kenneth E. Rudd, St. Louis, Mo., for plaintiff-appellant.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HUNTER,* District Judge.

JOHN R. GIBSON, Circuit Judge.

■ The Missouri Pacific Joint Protective Board, Brotherhood Railway Carmen of the United States and Canada, AFL–CIO, appeals from the district court's denial of its motion for a preliminary injunction against the Missouri Pacific Railroad Company, to prevent MoPac from contracting carmen's work on five outbound MoPac trains to the Alton and Southern Railroad. The Brotherhood claims that 45 U.S.C. § 152, Seventh (1970), prohibits the changes in working conditions unless the mandatory procedures set out in 45 U.S.C. § 156 (1970) are first exhausted. Because we conclude that the district court did not rule on whether there was a minor or major dispute, the basic issue underlying the granting or denial of a preliminary injunction under these circumstances, we remand to the district court.

The record revealed that there were several collective bargaining agreements between the parties including the Washington Job Protection Agreement of 1936 and the September 25, 1964 Agreement. The September Agreement, as amended by the Mediation Agreement of December 4, 1975, provided that the benefits of the Washington Job Protection Agreement are applicable to employees deprived of employment as a result of the transfer of work or contracting out of work.[1] The Washington Job Protection Agreement provided for allowances to MoPac employees affected by changes in operations. Under the Washington Job Protection Agreement controversies or disputes arising from such

---

* The Honorable Elmo B. Hunter, Senior District Judge for the Western District of Missouri, sitting by designation.

1. The September 25, 1964 Agreement, as amended, provided as follows:

The protective benefits of the Washington Job Protection Agreement of May, 1936, shall be applicable, as more specifically outlined below, with respect to employees who are deprived of employment or placed in a worse position with respect to compensation and rules governing working conditions as a result of any of the following changes in the operations of this individual carrier:
a. Transfer of work; ...
c. Contracting out of work; ....

changes could be referred to a committee for resolution.[2]

There was evidence that MoPac had the custom of making operational changes regarding the routing of their trains and had utilized "run through" trains over its entire system including the Alton and Southern in Illinois; four or five trains in Memphis, Tennessee; four or five at Kansas City, Missouri; Sweet Water, Texas; Houston, Texas; and Chicago, Illinois. Before each of these changes in operations, the MoPac carmen would perform the inspection and repair work on the MoPac trains but after the changes they would not. The Brotherhood had not filed grievances or raised questions as to these alleged earlier operational changes.

In October of 1982 MoPac decided to run five of its trains directly out of the Alton and Southern Railway in Illinois rather than out of its St. Louis facilities. Prior to that time the MoPac carmen had performed the inspection and repair work on these trains. According to MoPac this operational change resulted in a savings of approximately $6,000,000 a year and improved transit time by approximately twenty-four hours. The Brotherhood objected to the October change and called conferences to discuss payments to protect the MoPac carmen who would be adversely affected by this operational change.

On September 15, 1980, the General Chairman of the Brotherhood had served a notice under section 6 of the Railway Labor Act, 45 U.S.C. § 156, with respect to the contracting out of work which would other-wise be performed by the Brotherhood. Following this notice, negotiations on a national basis began and proceeded to the time of trial. MoPac has not given the Brotherhood a similar notice with respect to the five trains.

After hearing evidence and considering the briefs of the parties, the district court denied the motion for a preliminary injunction. Whether the case involves a major or minor dispute was not considered by the district court.

This Court has had several occasions in recent years to consider the Railway Labor Act, 45 U.S.C. §§ 151–188 (1970), and the requirement in section 6 of that Act for notice, conferences, or reference to the Mediation Board. In *Independent Federation of Flight Attendants v. Trans World Airlines*, 655 F.2d 155 (8th Cir.1981), Judge Arnold set forth the governing principles as follows:

> Section 6 of the Act applies only where there is an intended change "in agreements affecting ... working conditions" of the employees. The term "working conditions" is to be broadly interpreted. It includes those actual, objective working conditions out of which the dispute arose and which may not necessarily be covered in an existing collective bargaining agreement. These conditions, however, must have achieved the level of established practices and customs. We have held that "to establish a long-standing custom and practice, the conduct of the parties must encompass a continuity,

**2.** The Washington Job Protection Agreement of 1936 provided as follows:

Section 1. That the fundamental scope and purpose of this agreement is to provide for allowances to defined employees affected by coordination as hereinafter defined, and it is the intent that the provisions of this agreement are to be restricted to those changes in employment in the Railroad Industry solely due to and resulting from such coordination. Therefore, the parties hereto understand and agree that fluctuations, rises and falls and changes in volume or character of employment brought about solely by other causes are not within the contemplation of the parties hereto, or covered by or intended to be covered by this agreement.

Section 2(a). The term "coordination" as used herein means joint action by two or more carriers whereby they unify, consolidate, merge or pool in whole or in part their separate railroad facilities or any of the operations or services previously performed by them through such separate facilities.

Section 13. In the event that any dispute or controversy arises ... in connection with a particular coordination ... it may be referred by either party for consideration and determination to a Committee which is hereby established....

interest, purpose and understanding which elevates a course of action to an implied contractual status."

*Id.* at 157 (citations omitted). The Court's opinion continued:

> Where there is a "major" dispute, the settlement procedures of Section 6 must be followed. A "major" dispute is one arising out of the formation or change of a collective-bargaining agreement covering rates of pay, rules, or working conditions. A "minor" dispute, on the other hand, is one "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Jurisdiction over a "minor" dispute lies exclusively with the National Railroad Adjustment Board, and in such a case "the court should exercise equitable discretion to give that agency first opportunity to pass on the issue." If, however, the dispute is major, Section 6 expressly prohibits changes pending collective bargaining and thus authorizes injunctive relief to preserve the status quo.

*Id.* at 158 (citations omitted).

Thus, the basic issue in this case is whether the dispute is minor or major. The Brotherhood maintains that the dispute is a major one. It contends that the existing collective bargaining agreement prohibits contracting out because the agreement makes clear that all work which falls within the carmen's classification is to be performed by carmen employed by MoPac and represented by the Union, and there is no provision in the agreement which authorizes MoPac to engage in such a practice. The Brotherhood also claims that neither the September Agreement nor the Washington Job Protection Agreement authorizes MoPac's operational changes, arguing that MoPac's failure to invoke the notice and other procedural devices of either of these agreements refutes its contention that either of the agreements is applicable to or authorizes the October operational changes. Finally, the Brotherhood contends that its service of the section 6 notice and the failure of MoPac to give any kind of notice are also evidence that the present dispute is a major one.

■ MoPac's position is that the dispute is a minor one. According to MoPac the collective bargaining agreement and established past practices, as well as the September Agreement and the Washington Job Protection Agreement recognize MoPac's right to change its operations. MoPac contends that the controversy is over the meaning and extent of the collective bargaining agreement between the parties and that the Brotherhood admitted as much in its complaint. MoPac argues that the section 6 notice served by the Brotherhood supports its position. MoPac reasons that had the existing collective bargaining agreement granted the MoPac carmen an unqualified right to perform all work on MoPac trains which falls within the carmen's classification, there would have been no reason for the Brotherhood to attempt to change the agreement to prohibit MoPac from contracting out with the 1980 section 6 notice.[3]

As we have said, the district court did not inquire into whether the dispute involved is major or minor and made no factual findings in this regard. In this posture the only way we could reverse and order the granting of the Brotherhood's motion for a preliminary injunction would be to decide as a matter of law that the dispute involved is a major one. On the record before us, we cannot reach such a conclusion.

■ As we have recognized, whether a dispute is minor or major is often a question of degree, *Itasca Lodge 2029 v. Ry. Express Agency, Inc.*, 391 F.2d. 657, 665 (8th Cir.1968) (quoting *Rutland R.R. Corp. v. Brotherhood of Locomotive Engineers*, 307 F.2d 21, 33 (2d Cir.1962), *cert. denied,*

---

3. The serving of a section 6 notice is not determinative of whether the controversy involved is major or minor. *See United Transportation Union, Lodge No. 621 v. Illinois Terminal R.R. Co.,*

471 F.2d 375, 378 (7th Cir.1972); *Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers,* 307 F.2d 21, 33 (2d Cir.1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963).

372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963)), and turns upon the facts in each case. *See United Transportation Union, Lodge No. 621 v. Illinois Terminal R.R. Co.,* 471 F.2d 375, 379 (7th Cir.1972); *Rutland,* 307 F.2d at 36. Whether a dispute is minor or major involves first a determination of factual issues, *see Airline Pilots Ass'n v. Northwest Airlines, Inc.,* 570 F.2d 257, 258 (8th Cir.1978), and then conclusions of law based on those findings.

In the instant case there is at least one factual issue that needs to be determined. Whether MoPac has engaged in similar operational changes in the past which would amount to "established past practices" is in dispute. While MoPac argues that it has been making similar operational changes for at least ten years, the Brotherhood denies that there are any established past practices justifying MoPac's actions, and contends that it was not aware of any similar prior operational changes. Whether MoPac has made similar operational changes capable of constituting "established past practices" could be significant, if not determinative, in the resolution of whether the dispute is major or minor. *See St. Louis Southwestern Ry. Co. v. Brotherhood of R.R. Signalmen,* 665 F.2d 987, 990–91 (10th Cir.1981), *cert. denied,* 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); *United Transportation Union, Local Lodge No. 31 v. St. Paul Union Depot Co.,* 434 F.2d 220, 222–23 (8th Cir.1970), *cert. denied,* 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971). Findings concerning the nature of MoPac's operational changes and the applicability of the existing agreements between the parties would also be a desirable foundation for analysis of the critical issues.

In determining whether the dispute is major or minor the factual issues of MoPac's past practices and its operational changes are closely intertwined with the legal conclusions regarding the scope of the agreements between the parties. Because of this interrelationship and because of the importance of the factual findings, we believe the findings and conclusions should, in the first instance, be made by the district court. *See Pullman-Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982) (quoting *DeMarco v. United States,* 415 U.S. 449, 450, 94 S.Ct. 1185, 1186, 39 L.Ed.2d 501 (1974)). *See also Rule v. International Ass'n of Bridge Workers,* 568 F.2d 558, 568 (8th Cir.1978); *McCord, Condron & McDonald, Inc. v. Carpenters Local Union No. 1822,* 464 F.2d 1036, 1036 (5th Cir.1972) (case remanded where district court failed to make the required findings of fact and conclusions of law); Fed.R. Civ.P. 52(a); 5A J. Moore, *Federal Practice* ¶ 52.06[2], at 2718 (2d ed. 1982) ("Where the trial court fails ... to find on a material issue, and an appeal is taken, the appellate court will normally ... remand the action for appropriate findings to be made.") (footnote omitted); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3907, at 430 (1976) (The finding of facts and the application of generalized legal standards are the primary responsibility of the trial court.).

The district court has yet to rule on the issuance of a permanent injunction in this case. Whether the dispute involved is major or minor may be determined by the district court either in advance of its ruling on the Brotherhood's motion for a permanent injunction or at the time of its ruling. We express no opinion as to the facts of the case or its ultimate resolution, but simply acknowledge that the determination of whether the dispute is major or minor is, in the first instance, an issue for the district court to decide.

We remand this case to the district court.