651 F.Supp. 1190 (1987)
ALTON AND SOUTHERN LODGE NO. 306, BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, Plaintiff,
v.
ALTON AND SOUTHERN RAILWAY COMPANY, Defendant.
No. 84-1011C(2).
United States District Court, E.D. Missouri.
January 14, 1987.
Robert F. Ritter, Gray & Ritter, St. Louis, Mo., for plaintiff.
Nina K. Wuestling, Thompson & Mitchell, St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court after trial for a decision on the merits. The Court adopts this entire memorandum as its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. The matter arises from a labor dispute between the parties and is governed by the Railway Labor Act, 45 U.S.C. §§ 151-188.
The parties have stipulated to the following facts which spell out the basic controversy.
Plaintiff Alton and Southern Lodge No. 306 Brotherhood Railway Carmen of the United States and Canada is a duly organized and existing labor organization composed of carmen employed by defendant The Alton & Southern Railway Company. Plaintiff is affiliated with the Brotherhood Railway Carmen of the United States and Canada. Defendant is a duly organized and existing corporation engaged primarily in the transportation of freight by rail.
*1191 Defendant and its carmen employees assigned to work on the repair track are governed by several collective bargaining agreements including the general working agreement. The general working agreement is entitled "Agreement Between Alton and Southern Railroad and System Federation No. 154, Railway Employees Department, AFL-CIO." This agreement, governing rates of pay, rules and working conditions for defendant's carmen employees assigned to the repair track, has been amended from time to time.
For approximately thirty years prior to November 22, 1983, defendant's carmen employees assigned to the repair track worked from 7:00 a.m. to 3:00 p.m. with the exception of one carman-painter who worked from 8:00 a.m. to 4:00 p.m. All these employees had a paid twenty minute lunch period.
Defendant wanted to change the hours and time and length of the lunch period of its carmen employees assigned to the repair track and met with representatives of the carmen on two occasions. During both of these meetings, defendant informed the carmen's representatives of the desire to change the hours and time and length of lunch of carmen employees from 7:00 a.m. to 3:00 p.m. with a twenty minute paid lunch to 8:00 a.m. to 4:30 p.m. with a thirty minute unpaid lunch. The parties did not reach an agreement, and defendant changed the hours in accordance with their stated plans effective November 22, 1983.
As the Court has stated and the parties have stipulated, the matter is governed by the Railway Labor Act. The question facing the Court is one of categorizing the parties' dispute to determine the appropriate non-judicial procedure under the Act to utilize in resolving the dispute.
If the dispute is "minor," the problem is one within the exclusive jurisdiction of the National Railroad Adjustment Board under 45 U.S.C. § 153, First (i) and the Court can only grant injunctive relief under the ordinary equitable principles. If the dispute is "major" "courts have broad powers to enjoin unilateral action by either side in order to preserve the status quo while statutory settlement procedures go forward." Brotherhood of Maintenance of Way Employees, Lodge 16 v. Burlington Northern Railroad Company, 802 F.2d 1016, 1021 (8th Cir.1986) (Arnold, J., concurring).
Judge Arnold's concurring opinion, in which all of the members of the court joined, set out the standard for determining whether a dispute is "major" or "minor."
[A] dispute is minor if the agreement is "reasonably susceptible" of the interpretations sought by both the employer and the employees. Independent Federation of Flight Attendants v. Trans World Airlines, 655 F.2d 155, 158 (8th Cir.1981). Other courts have said that a dispute is minor if the employer's action can be arguably justified under the terms of the existing agreement, see, e.g., REA Express, Inc. v. Brotherhood of Railway, Airline, and Steamship Clerks, 459 F.2d 226, 231 (5th Cir.), cert. denied, 409 U.S. 892 [93 S.Ct. 115, 34 L.Ed.2d 149] (1972), or that the dispute is minor unless the employer's argument that its actions are within the contract is "obviously insubstantial," see Airlines Stewards & Stewardesses Association v. Caribbean Atlantic Airlines, 412 F.2d 289, 291 (1st Cir.1969). These locutions are essentially the same in their result. They illustrate the relatively light burden which the railroad must bear in showing that its actions are at most minor changes and thus within the status quo.
Id. at 1022.
In determining what the agreement between the parties is, the Court must look beyond the express words of the contract. It is impossible for the written contract to describe every possible aspect of working conditions, and the parties are to develop customs and practices which are understood to be the norm. "When longstanding practice ripens into an established and recognized custom between the parties, it ought to be protected against sudden and unilateral change as though it were a part of the collective bargaining agreement itself." *1192 Id. The past practices of the parties are clearly relevant and to the extent defendant's motion in limine seeks to exclude evidence of past practices it is denied.
Defendant argues that the dispute here is minor, that is, arguably justified under the existing agreement and, therefore, within the exclusive jurisdiction of the National Railroad Adjustment Board. Defendant bases its decision on Rules 1, 2, 3 and 7 of the collective bargaining agreement which provides in relevant part,
RULE 1. Eight (8) hours shall constitute a day's work, and six (6) days per week for the regular forces. Should a depression in business make it necessary to temporarily reduce expenses, the hours per week may be reduced to forty (40) hours, and if necessary, to continue for four weeks, after which time the regular six (6) days per week must be worked, and if still necessary, a reduction in force must be made in accordance with Rule 15.
RULE 2. When one shift is employed, the starting time shall not be earlier than 7:00 a.m., nor later than 8:00 a.m. The time and length of the lunch period shall be subject to mutual agreement with the Committee.
RULE 3. When more than one shift is employed, the starting time of the first shift shall be governed by Rule 2. The starting time of the second, or the second and third shifts shall be arranged for the best interest of the work to be performed, but in no case inconsistent with the employee's welfare. Each shift shall consist of eight (8) consecutive hours including an allowance of twenty (20) minutes for lunch within the limits of fourth and fifth hours. When service requirements will not permit the taking of the lunch period within the fourth and fifth hours as per this rule, a penalty time of twenty (20) minutes at pro rata rate will be allowed and the employee will be allowed to procure lunch without loss of time as soon thereafter as possible.
....
RULE 7. Employees assigned under the provisions of Rule 2 required to work during the lunch period will be paid for one-half hour at straight time and be allowed necessary time to procure lunch without loss of time.
Rule 2 specifically sets out the starting time for workers on one shift. The defendant's change of starting time is clearly within these express limitations, and defendant's position is, therefore, arguable within the definition of minor disputes.
Rule 2 further states that the time and length of lunch is subject to mutual agreement with the committee. Defendant interprets this provision to mean that the parties must meet and negotiate these terms. The parties did meet but were unable to come to an agreement. Again, the Court finds that defendant's interpretation is arguable and this brings it within the definition of "minor" disputes.
The question of whether nonpayment of time for lunch is arguably within the terms of the collective bargaining agreement is more difficult. Rule 1 states that eight hours equals a day's work, and, the company reasons that lunch is not work so that no compensation is required. Further Rule 3 specifically provides that workers on multiple shifts are entitled to paid lunch, while no such provision exists within the rules for single shift employees. Finally Rule 7 provides for special compensation where single shift employees are required to work through lunch. The rule gives the inference that single shift workers are not ordinarily paid for lunch. The Court finds that defendant's position with regard to the payment of lunch is arguable based on the collective bargaining agreement.
Plaintiff correctly argues that the Court's determination cannot be made without considering the practices of the parties. The evidence clearly shows that the parties' past practice was that one shift employees were paid for lunch. This was the practice for approximately 30 years with *1193 the exception of five to seven years when the carmen were on three shifts.
This case, however, does not present a situation where the practice of the parties fills in for circumstances not covered by the agreement. Defendant has made an arguable case that nonpaid lunch was bargained for and given in the exchange of promises set out in the written collective bargaining contract. In such a case, the Court believes the matter is within the definition of "minor" dispute. See Brotherhood of Railway Carmen of the United States and Canada, AFL-CIO-CLC, v. Norfolk and Western Railway Company, 745 F.2d 370, 377-78 (6th Cir.1984) (past practices did not dictate decision in light of railroad's arguable contentions based on contract language).
Having determined that the matter is a "minor" dispute under the Railway Labor Act, the Court feels that plaintiff has failed to make the requisite showing under traditional equitable principles to justify injunctive relief. Specifically, the Court finds that any damage to plaintiff is compensable by money damages. Defendant's motion in limine and to strike will be denied as moot to the extent it relates to actual and punitive damages. Plaintiff's objections to defendant's exhibits A and S are overruled. Plaintiff's objections to defendant's exhibits B, C, O, P, Q, W, and X are overruled as moot. Finally, defendant's motion to reopen the record to include the decision of the National Railway Adjustment Board in defendant's favor will be denied as moot.

JUDGMENT
In accordance with the Memorandum filed this day and incorporated herein by reference,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant shall have judgment against plaintiff and that plaintiff's complaint is DISMISSED with prejudice. Plaintiff shall pay the costs of this action.