827 F.2d 330
 126 L.R.R.M. (BNA) 2199, 56 USLW 2192,
107 Lab.Cas. P 10,109
 BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, and Chicago and
North Western System Federation, Brotherhood of
Maintenance of Way Employees, Appellees,
v.
CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Appellant.
 No. 86-5403.
 United States Court of Appeals, Eighth Circuit.
 Submitted Jan. 15, 1987.
 Decided Aug. 25, 1987.
Rehearing and Rehearing En Banc Denied Nov. 13, 1987.
 
 Ralph J. Moore, Jr., Washington, D.C., for appellant.
 Roger J. McClow, III, Southfield, Mich., for appellees.
 Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The Chicago & Northwestern Transportation Company (CNW) appeals an order of the district court granting the Brotherhood of Maintenance of Way Employees (BMWE) a preliminary injunction prohibiting enforcement of one of the CNW's employee rules subjecting employees to discipline for possession, use, or sale of illegal drugs while off duty until such time as the CNW complies with section 6 of the Railway Labor Act (RLA), 45 U.S.C. Sec. 156.
 
 
 2
 * On April 27, 1986, the CNW unilaterally implemented an amendment to its "Operating Rule G" (hereinafter Rule G) prohibiting use, possession or sale of any illegal drug by an employee while off duty. The BMWE informally protested the rule change. On June 17, 1986, Michael White, a BMWE member and CNW employee, was arrested for possession of marijuana. On June 20, 1986, White was informed that he was suspended from employment with the CNW. On July 22, 1986, before White had an opportunity to enter a plea in local court to the charges against him, the CNW held a hearing to determine whether he had violated Rule G. At the hearing, White vigorously denied the charges against him. Nonetheless, relying solely upon the criminal complaint in the matter, the CNW terminated White for violating Rule G on July 25, 1986.[1]
 
 
 3
 On July 28, 1987, the BMWE brought a motion in district court for a preliminary injunction prohibiting the CNW from enforcing Rule G until it had fully complied with the notice, negotiation, and mediation procedures of the RLA, 45 U.S.C. Secs. 151-188. The BMWE also sought to have White reinstated with back pay. After hearing arguments on the motion on August 14, 1986, and September 23, 1986, and considering affidavits and exhibits submitted by the parties, the district court granted the BMWE's motion in an oral ruling from the bench. The court found that although Rule G is not part of the written collective bargaining agreement of the parties, the knowledge and acquiescence of the parties over a long period of time in the rule has elevated it to an implied term of the collective bargaining agreement of the parties affecting the actual working conditions at the CNW. In addition, the court found that the amendment of Rule G represented a formal change in the agreement of the parties rather than a reinterpretation or application of the agreement. It concluded that the action represented a major dispute in which it was obliged to enter a status quo injunction pursuant to section 6 of the RLA, 45 U.S.C. Sec. 156. Finally, as a result of the injunction requiring maintenance of the preamendment status quo, the court ordered White reinstated with back pay from the date of his discharge. The CNW appeals.
 
 II
 
 4
 Relations between the BMWE and the CNW are governed by the RLA, 45 U.S.C. Secs. 151-188. Under the RLA, both sides have an obligation to negotiate whenever a dispute arises. See 45 U.S.C. Sec. 152 first and second. If such negotiations prove fruitless, the dispute may take one of two settlement routes depending upon whether it is a major or minor dispute. If a dispute is major, the parties must follow an "almost interminable process" beginning with the National Mediation Board. See 45 U.S.C. Sec. 155; Detroit and Toledo Shore Line R.R. Co. v. United Transportation Union, 396 U.S. 142, 149, 90 S.Ct. 294, 299, 24 L.Ed.2d 325 (1969). If, on the other hand, the dispute is minor, it must be submitted to arbitration by the National Railroad Adjustment Board. See 45 U.S.C. Sec. 153. Additionally,
 
 
 5
 [t]he question whether a dispute is major or minor determines the degree to which a federal court may become involved in the dispute. If the dispute is major, the courts have broad powers to enjoin unilateral action by either side in order to preserve the status quo while settlement procedures go forward. Such an injunction may issue without regard to the usual balancing of the equities. But if the dispute is only minor, the court's power is more limited since the NRAB has exclusive jurisdiction over such minor disputes. The traditional power to enjoin under equitable principles remains, but in the usual case it is inappropriate to exercise this power since irreparable loss and inadequacy of the legal remedy cannot plainly be shown until the NRAB has had an opportunity to act.
 
 
 6
 Brotherhood of Maintenance of Way Employees, Lodge 16 v. Burlington Northern R.R. Co., 802 F.2d 1016, 1021 (8th Cir.1986) (citations omitted).[2]
 
 
 7
 The terms major and minor dispute are not found in the RLA. Rather, major dispute is a shorthand term for a dispute falling under 45 U.S.C. Sec. 156 which speaks of "change[s] in agreements affecting rates of pay, rules, or working conditions," and minor dispute is a shorthand term for a dispute falling under 45 U.S.C. Sec. 153(i) which speaks of "disputes ... growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."
 
 
 8
 Determining whether a dispute is major or minor is often a question of degree and turns upon the facts in each case. Missouri Pacific Joint Protective Board v. Missouri Pacific R.R. Co., 730 F.2d 533, 536-37 (8th Cir.1984). At base, the question is whether the dispute may be resolved by interpretation or application of the existing agreement of the parties. If so, it is a minor dispute. In contrast, if the dispute arises out of an area not contemplated by the agreement or arises because a party is seeking to change a term of the agreement, it is a major dispute. See Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 723-24, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945); Brotherhood of Maintenance of Way Employees, Lodge 16, 802 F.2d at 1021 n. 3; Independent Federation of Flight Attendants v. Trans World Airlines, Inc., 655 F.2d 155, 157-58 (8th Cir.1981).
 
 
 9
 It is not, however, for the courts to interpret the agreement of the parties for the purpose of finally adjudicating a dispute between employees and the carrier. See Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 564, 66 S.Ct. 322, 323, 90 L.Ed. 318 (1946). The RLA clearly leaves this task to the National Railroad Adjustment Board. See 45 U.S.C. Sec. 153(i). Thus, although for purposes of deciding whether a section 6 injunction should issue a court must first determine what the agreement of the parties is, Brotherhood of Maintenance of Way Employees, Lodge 16, 802 F.2d at 1022, this Court has held that a dispute must be considered minor and a status quo injunction should not ordinarily issue if the agreement of the parties is "reasonably susceptible" of the interpretations sought by both the employer and the employees. Independent Federation of Flight Attendants, 55 F.2d at 158. On review, questions as to the content of the agreement of the parties are factual, and may be reversed only if clearly erroneous, while the susceptibility of the interpretations of the agreement sought by the employer and the employees presents an issue of law.
 
 III
 
 10
 In applying the RLA to the facts of this case, the district court found that although not part of the written collective bargaining agreement, Rule G has regulated employee intoxicant use for a sufficient period of time with the knowledge and acquiescence of the CNW and the BMWE to become part of the implied agreement of the parties. The CNW contends that this finding is clearly erroneous. In support of its contention, the CNW argues that its explicit collective bargaining agreement with the BMWE is completely silent on employee alcohol or drug use and that the effect of this silence is to commit the subject to its discretion. More specifically, the CNW argues that the district court erroneously invoked section 6 of the RLA, 45 U.S.C. Sec. 156, because
 
 
 11
 [t]here is no * * * agreement between the parties--written or unwritten--concerning employee drug involvement, or illegal off duty conduct, since these subjects * * * historically have been left to C & NW as a matter of managerial prerogative.
 
 
 12
 CNW reply brief at 8-9.
 
 
 13
 We cannot, on the basis of the record before us, accept the CNW's argument. As this Court has recently stated:
 
 
 14
 Since, as a practical matter, it is impossible for the written collective bargaining agreement to describe every possible permutation of working conditions which might arise, it is not unusual for the parties to a labor agreement to develop working relationships, customs, and practices which are understood to be the norm, but which are nowhere reduced to a formal contract term. When longstanding practice ripens into an established and recognized custom between the parties, it ought to be protected against sudden and unilateral change as though it were a part of the collective bargaining agreement itself.
 
 
 15
 Brotherhood of Maintenance of Way Employees, Lodge 16, 802 F.2d at 1022.
 
 
 16
 After reviewing the record existing at this stage in the case, we find that the district court did not err in holding that Rule G, by virtue of the parties' longstanding and recognized custom and practice, has become an implied term in the agreement of the parties.
 
 
 17
 Having found that Rule G constitutes an implied term in the agreement of the parties, it is necessary to determine whether the pre-amendment version of the parties' agreement (the implied term under the "old Rule G") is "reasonably susceptible" to being interpreted in a manner consistent with the post-amendment version (the implied term under the "new Rule G"). If the pre-amendment version is reasonably susceptible to such an interpretation, the dispute is a minor one and an injunction should issue only in rare circumstances. See Brotherhood of Maintenance of Way Employees, Lodge 16, 802 F.2d at 1022; Independent Federation of Flight Attendants v. Trans World Airlines, 655 F.2d at 158.
 
 
 18
 In this respect, the district court held that, "[s]ince the grievances at issue grew out of a formal change to Rule G rather than out of an interpretation or application of that rule, the grievance is a major dispute." The CNW contends that this holding is erroneous. The CNW argues that the amendment to Rule G served only to make explicit that which was already prohibited by its operating Rule 7, the "conduct unbecoming rule." Although we recognize that the evidence on the issue is not as clear and complete as the parties may wish, the district court was correct in rejecting the CNW's argument with respect to Rule 7 on the basis of the evidence properly before it when it granted the preliminary injunction.
 
 
 19
 Determining the state of the record before the district court at the time it granted the motion for a preliminary injunction is difficult due to the procedural history of the case. On August 14, 1986, a hearing was held before the district court on the BMWE's motion for a preliminary injunction and the CNW's cross motion to dismiss. Both parties presented briefs in support of their motions. In its brief, the CNW referred to the conduct unbecoming rule but focused primarily on its right to unilaterally amend Rule G. In addition, the CNW presented an affidavit of Ronald Cuchna, vice president of labor relations for the CNW (8/1/86 affidavit). The affidavit made no mention of any past practice of regulating off duty employee drug use, possession, or sale under the conduct unbecoming rule. Attached to the affidavit were copies of portions of the CNW's past and present disciplinary rules depicting the evolution of Rule G and a copy of a board of adjustment decision in a dispute between Southern Pacific Transportation Company and Brotherhood of Locomotive Engineers holding a rule similar to the amended Rule G applicable to off duty sale of drugs.
 
 
 20
 At the August hearing, the BMWE presented its argument in full to the court. Before the CNW could present its argument, however, the trial judge suggested that the remainder of the proceeding be stayed pending efforts by the parties to resolve their differences privately. On September 23, 1986, after efforts to settle the dispute failed, the hearing before the district court was resumed and the CNW presented its argument. Also at the September hearing, the BMWE offered to supplement the record with additional exhibits and live testimony. The trial judge refused the offer and granted the BMWE's motion for the preliminary injunction.
 
 
 21
 The CNW subsequently brought a motion urging the district court to reconsider its decision. Appended to that motion was another affidavit by Ronald Cuchna (9/29/86 affidavit) stating:
 
 
 22
 The Rule G provisions, as promulgated by the C & NW on April 27, 1986, regarding the illegal use, possession or sale of drugs while on or off duty are merely a specification of General Rule 7 provisions which are applicable to employees of the C & NW. * * * General Rule 7 would also prohibit the conduct cited in the complaint concerning Mr. White.
 
 
 23
 The district court denied CNW's motion stating:
 
 
 24
 In its reconsideration motion, the Railroad fervently argues that it has traditionally regulated employee off-duty conduct through Rule 7, known as the "conduct unbecoming" rule, as well as through various other company rules. It is clear, of course, that only Rule G was before this Court when considering the underlying motion for a preliminary injunction. Simply put, the propriety of the company's regulation of off duty conduct by means other than Rule G is not at issue in this case.
 
 
 25
 Although the parties will have the right to supplement the record in any further proceedings with respect to past practice under Rule 7, on the basis of the record before it at the time it granted the preliminary injunction, we hold that the district court was correct in determining that Rule 7 was not at issue in the case. At the time the district court granted the injunction, the record did not reflect that the CNW applied Rule 7 and the amended Rule G in a manner that would suggest the two rules covered the same territory. On the contrary, several factors strongly suggested that this was not the case. First, the CNW had found it necessary to amend Rule G and to insist on the amendment despite strong opposition in the form of this action. If the two rules actually covered the same conduct in the same manner, it would be senseless for the CNW to waste time, energy and money attempting to enforce amended Rule G. Second, in the proceedings the CNW brought against him, White was only charged with violating Rule G and not Rule 7. If the rules are coextensive, one would think White would have been charged with violating both. Third, and most importantly, Rule 7, on its face, is limited to instances in which the employee's conduct has an adverse effect on the carrier, i.e., a loss of good will, potential danger to other employees, or reduced work performance.[3] Rule G is not so limited. In fact, White's case provides an example of the distinction. White was discharged solely on the basis of a criminal complaint. The CNW, by the terms of Rule G, did not have to show loss of good will, danger to other employees, or reduced job performance.
 
 
 26
 Alternatively, the CNW argues that Rule G is at most a minor change in the implicit agreement of the parties because the past practice of the parties, which itself is part of the implicit agreement of the parties, shows that the CNW always possessed the right to make unilateral changes in Rule G. In other words, the CNW contends that the agreement of the parties consists not only of the Rule G in effect at any given time, but also consists of the right of the CNW to change the rule unilaterally. The district court, in defining the status quo to be maintained during the preliminary injunction, rejected this position as unreasonable. It stated:
 
 
 27
 Since 1910 the Railroad has unilaterally regulated employee's intoxicant use while on duty, subject to duty, or on company property, all under Rule G. The Railroad has never regulated the off duty conduct of an employee while away from company property until the change in Rule G, which it unilaterally promulgated in April 1986.
 
 
 28
 In support of its position, the CNW cites United Transportation Union, Lodge No. 31 v. St. Paul Union Depot Co., 434 F.2d 220 (8th Cir.1970), for the proposition that an implied term in a bargaining agreement may include the unilateral power to change the term.[4] Whatever the merit of the proposition, St. Paul Union Depot also requires that an implied term, "demonstrate not only a pattern of conduct but also some kind of mutual understanding, either express or implied." The case goes on to state that factors to consider in determining whether a past practice has become an implied term of a bargaining agreement are, "the mutual intent of the parties, their knowledge of and acquiescence in the prior acts, along with evidence whether there was joint participation in the prior course of conduct, all to be weighed with the facts and circumstances in the perspective of the present dispute." Id. at 223.
 
 
 29
 Common sense and this Court's prior cases indicate that there are limits on the extent to which the CNW may amend Rule G consistent with the history and acquiescence of the parties in past amendments. In this light we agree with the district court that the agreement of the parties (including any terms necessarily implied as a result of established past practices and working conditions) is not reasonably susceptible to the CNW's proposed interpretation whereby it has the right to unilaterally extend its operating rules to regulate off duty use, possession, or sale of illegal drugs in the manner contemplated by the amendment to Rule G.[5]
 
 
 30
 Thus, we hold that the CNW has failed to meet its "relatively light burden" of showing that the pre-amendment agreement of the parties, including both express and implied terms, is reasonably susceptible of being interpreted to allow the amendment to Rule G the CNW seeks to implement unilaterally. See Brotherhood of Maintenance of Way Employees, Lodge 16, 802 F.2d at 1022. The district court correctly concluded that the action represents a major dispute in which it could issue a status quo injunction pursuant to 45 U.S.C. Sec. 156.[6]
 
 IV
 
 31
 As a final matter, the CNW argues that the district court exceeded its jurisdiction by entering an order that enjoins enforcement of Rule G against any of the CNW's employees, not just against employees represented by the BMWE. Since the BMWE did not seek to enjoin the CNW from enforcing Rule G as amended against any parties other than those it represents, the district court's order, shall be amended to enjoin enforcement of Rule G only against those represented by the BMWE.
 
 
 32
 Accordingly, as modified by part IV of this opinion, the judgment and order of the district court are affirmed.
 
 
 
 [1]
 Aside from White's denial of the charges against him, the only evidence introduced at the hearing pertaining to the violation of Rule G is found in the testimony of Donald G. Mundth, inspector of police for the CNW who testified:
 Q. Mr. Mundth, in what way did you become involved in this incident?
 A. On Thursday, June 18, 1986, Mr. Terbell approached me and requested that I assist him in the investigation of an employee who was arrested at Mankato, Minnesota for possession of controlled substance. I told Mr. Terbell that I would follow up and investigate the matter.
 Q. In your follow-up did you have any contact with the local Civil Authorities here at Mankato?
 A. Yes, I did.
 Q. Did you discuss the charges against Mr. White with the Civil Authorities?
 A. Yes, I did.
 Q. And do you have any information of what these charges are?
 A. Yes I do. Mr. Irwin, I have a copy of the District Court's Criminal Complaint which charges Mr. Michael Bruce White with various charges.
 Q. Would you please, for the record, read what these charges are?
 A. The Criminal Complaint consists of three pages. The first page establishing facts of the matter and determining what probable cause exists to make the charges. The second page is actually the page on which the charges are listed * * *.
 * * *
 Q. Mr. Mundth * * * are these charges filed against Mr. White a violation of Rule G?
 A. Yes, they are.
 
 
 [2]
 In its brief, the CNW contends that the district court erred as a matter of law in failing to engage in the traditional balancing of the equities prior to granting the injunction. As the quoted passage indicates, however, an injunction pursuant to 45 U.S.C. Sec. 156 "may issue without regard to the usual balancing of the equities." Brotherhood of Maintenance of Way Employees, Lodge 16, 802 F.2d 1016, 1021 (8th Cir.1986). Therefore, we reject the CNW's contention
 
 
 [3]
 Rule 7, in its entirety, states:
 Employees are prohibited from being careless of the safety of themselves or others, disloyal, insubordinate, dishonest, immoral, quarrelsome, or otherwise vicious or conducting themselves in such a manner that the railroad will be subjected to criticism and loss of good will, or not meeting their personal obligations.
 Affidavit of Ronald J. Cuchna dated September 29, 1986, exhibit 2.
 
 
 [4]
 The CNW also argues that the district court's factual finding that "[t]he Railroad has never regulated the off duty conduct of an employee while away from company property until the change in Rule G" is clearly erroneous. We disagree. The statement must be taken in the light of the record before the court at the time it granted the preliminary injunction as well as in the context of the case. Clearly the court did not intend by the statement that the CNW had never before regulated off duty employee conduct in any way. Rather, in the context of the case, it is clear that the district court was considering only regulation of that off duty conduct that would be regulated under the amendment to Rule G, that is, off duty possession, use, or sale of illegal drugs. So understood, the district court's finding is not clearly erroneous
 
 
 [5]
 The CNW additionally contends that because it has retained the right to unilaterally amend Rule G since its inception, the status quo imposed pursuant to 45 U.S.C. Sec. 156 must also include that right. The district court rejected this contention. On the basis of our rejection of the CNW's assertion that any implied term must include the absolute power to amend Rule G unilaterally, we affirm the district court in this regard
 
 
 [6]
 In so holding we note that this case comes to the Court on appeal from a grant of a preliminary injunction. In the present posture of the case our review is limited to the record before the district court at the time it issued the preliminary injunction