**SOUTHERN RAILWAY COMPANY et al., Appellants,**

v.

**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Appellee.**

No. 21124.

United States Court of Appeals District of Columbia Circuit.

July 21, 1967.

See also D.C., 217 F.Supp. 58 and 223 F.Supp. 249.

---

Mr. Charles A. Horsky, Washington, D. C., with whom Mr. Hugh B. Cox, Washington, D. C., was on the pleadings, for appellants.

Mr. Joseph L. Rauh, Washington, D. C., with whom Mr. Isaac N. Groner, Washington, D. C., was on the pleadings, for appellee.

Before WRIGHT, TAMM and LEVENTHAL, Circuit Judges.

## ORDER

PER CURIAM.

This cause came on for hearing on appellants' motion for suspension of injunction pending appeal and the Court heard arguments of counsel.

Upon consideration whereof, it is

Ordered by the Court that the aforesaid motion be granted and, with the exception of paragraphs (h) and (i), the order of the District Court of June 30, 1967, is stayed, and it is

Further ordered by the Court that the record in this case is remanded to the District Court for further proceedings in accordance with the attached opinion. The Clerk is authorized to transmit a certified copy of this order to the Clerk of the District Court as promptly as the business of his office will permit.

## MEMORANDUM

PER CURIAM:

In 1965, following our decision in Southern Railway Company v. Brotherhood of Locomotive Firemen, 119 U.S. App.D.C. 91, 337 F.2d 127 (1964), the parties to that case executed a new collective bargaining agreement changing, *inter alia*, the rules with respect to employment of firemen. The 1965 agreement in effect requires Southern to place firemen on 10% of its freight and yard runs in each "seniority district" if such runs are designated by the union. These are referred to as "vetoed jobs," since to that extent the union may veto the carrier's decision to dispense with firemen. The agreement further provides: "All agreements, rules, regulations, interpre-

tations, and practices, however established, with respect to the employment of firemen (helpers) shall continue undisturbed except as modified by the terms of this agreement." The agreement previously existing between the parties was executed in 1959.

On May 10, 1967, the union filed suit in the District Court alleging that the appellants had committed "deliberate, systematic and wholesale" violations of the Railway Labor Act, 45 U.S.C. § 151 et seq. and the 1959 and 1965 collective bargaining agreements, and seeking "injunctive and other relief." Many of the alleged violations relate to 1) the appellants' failure to place firemen on all "vetoed jobs" and 2) the use of personnel other than firemen for "hostling" duties (moving engines short distances in connection with service and repair). With respect to these violations, the nub of the controversy is the union's contention that the railroad has failed to respect its obligation, under the 1959 and 1965 agreements, to hire a sufficient number of firemen to man the designated runs and to perform "hostling" duties. The appellants admit that in about 500 instances firemen were not placed on "vetoed jobs" and on a number of occasions supervisors or other personnel performed "hostling" duties. However, they point out that the 500 instances in which firemen were not placed on "vetoed jobs" constitute only 1% of all designated runs since the adoption of the 1965 agreement, and assert that in nearly all those instances the placing of a fireman was made impossible by the existence of an "emergency," such as last-minute absence of an assigned fireman. Appellants deny that they have an obligation under the agreement to cancel a designated run when use of a fireman is made impossible by unforeseen circumstances. They advance similar arguments with respect to some of the alleged "hostling" violations, and contend that other alleged violations did not involve "hostling" within the meaning of the agreements. Appellants state that the latter question is now pending in a grievance proceeding before the

National Railroad Adjustment Board. And finally, appellants allege, and the union does not deny, that they hired additional firemen in response to complaints by the union on several occasions.

In addition to the violations relating to "vetoed jobs" and "hostling," the union alleges that the appellants have violated the agreements by refusing to give examinations for the hiring of firemen and for the promotion of firemen to engineer, and by hiring engineers other than from the ranks of firemen. On the question of examinations, the appellants admit that the 1959 agreement requires examinations to be given to firemen to determine suitability for retention, by examinations given within a year after hiring, and for their promotion to engineer. Appellants allege, however, that no such examinations have been given since 1958, and therefore under the "practices, however established" language of the 1965 agreement, examinations are no longer required. They also contend that no promotions from fireman to engineer have been made since 1966 because there were no qualified firemen to fill the positions. The union admits that under a provision of the 1959 agreement the railroad may hire engineers other than from the ranks of firemen, but alleges that the uniform practice until 1966 was to fill all engineer vacancies by promoting firemen.

Following a hearing, at which both parties submitted affidavits and other documentary evidence, and the union in addition called several witnesses, the District Court granted the union's motion for a Preliminary Injunction. In addition to enjoining the alleged violations discussed above, the court enjoined the appellants from "failing or refusing to meet and treat with the [plaintiff] or to exert every effort in good faith to resolve any disputes which may have arisen or which may arise with the [plaintiff]." Appellants have now requested that the order of the District Court be suspended pending its appeal therefrom, under Rule 11 of the General Rules of this Court and Rule 62(c) of the Federal Rules of Civil Procedure.

It is true, of course, that this court will not ordinarily disturb the order of the District Court granting or denying a preliminary injunction except for "abuse of discretion" or "clear error." Maas v. United States, 125 U.S.App.D.C. 251, 371 F.2d 348 (1966); Young v. Motion Picture Association of America, 112 U.S.App.D.C. 35, 299 F.2d 119, cert. denied, 370 U.S. 922, 82 S.Ct. 1565, 8 L.Ed. 2d 504 (1962). It is also true that "ordinarily this court will not consider the merits of the case further than necessary to determine whether that discretion was abused." Young v. Motion Picture Association of America, Inc., supra, 112 U.S. App.D.C. at 37, 299 F.2d at 121. We must take these principles into account, of course, in determining whether appellants have made such a "strong showing" that they are "likely to prevail on the merits" as to warrant staying the order of the District Court. Va. Petroleum Job Association v. FPC, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). Where, as here, we believe there is substantial doubt whether the District Court had jurisdiction to grant part of the relief afforded, we think that, as to that portion of its order, such a showing has been made.

I.

The parties seem generally agreed that the question whether the District Court had power to enjoin the alleged violations of the 1959 and 1965 agreements depends primarily on whether a "major" or "minor" dispute is involved. If the controversy is a "minor" dispute, the District Court had jurisdiction only to the extent that injunctive relief might be required to preserve the *status quo* pending resolution of the controversy by the National Railroad Adjustment Board. Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. R., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960). Thus, if a "minor" dispute is presented the District Court exceeded its authority for two reasons: 1) rather than enjoining alteration of the *status quo*, the court's order requires the appellants to make numerous significant changes in present practices, some of which are al-

legedly of long standing; and 2) there is no proceeding pending before the National Railroad Adjustment Board, and thus no basis for the assertion of jurisdiction by the District Court. Manion v. Kansas City Terminal Ry., 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722 (1957) (per curiam); Westchester Lodge 2186 v. Railway Express Agency, 329 F.2d 748 (2d Cir. 1964); Hilbert v. Pennsylvania R. R., 290 F.2d 881 (7th Cir. 1961) cert. denied, 368 U.S. 900, 82 S.Ct. 174, 7 L.Ed. 2d 96 (1961). On the other hand, the District Court clearly had jurisdiction to enjoin unilateral attempts by the appellants to modify the existing agreement without following statutory procedures, if the dispute is "major." Southern Ry. v. Brotherhood of Locomotive Firemen, 119 U.S.App.D.C. 91, 337 F.2d 127 (1964).

 The difference between "minor" disputes, over which the National Railroad Adjustment Board has exclusive jurisdiction, and "major" disputes, the procedures for resolution of which are prescribed in § 6 of the Railway Labor Act, 45 U.S.C. § 156, can be set forth succinctly: "Major" disputes relate to the formation of new agreements or modification of existing agreements; "minor" disputes relate to the interpretation or application of existing agreements.[1] This distinction, however, like many others in the law, is more easily stated than applied. The problem, of course, is drawing the line between disagreements over contract terms and unilateral attempts to amend the agreement. If the railroad took action which it admitted was not in conformity with the existing agreement there would be no question that a "major dispute" was involved; and the same result necessarily obtains where the railroad's claimed justification is without any reasonable basis in the contract. United Industrial Workers v. Board of Trustees, 351 F.2d 183 (5th Cir. 1965). But we think that, where the railroad asserts a defense based on the terms of the existing collective bargaining agreement, the controversy may not be termed a "major" dispute unless the claimed defense is so obviously insubstantial as to warrant the inference that it is raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements. Even conceding, *arguendo,* that it could be found on the record below that the railroad's contentions with respect to what is required of it under the 1959 and 1965 agreements are so inherently unreasonable as to amount to bad faith,[2] we entertain substantial doubt that the District Court made this essential finding.[3] In

1. The Supreme Court has described the difference as follows:

The first [class of controversy] relates to disputes over the formation of collective bargaining agreements or efforts to secure them. They arise whenever there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to the assertion of rights claimed to have vested in the past.

The second class, however, contemplates the existence of a collective bargaining agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. * * * In either case the claim is to rights accrued, not merely to have new ones created for the future.

Elgin J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).

2. Amplification of the record may be necessary in order to determine whether there is any substance to appellants' contentions. We contemplate that the trial court will proceed expeditiously to a trial on the merits and that the parties will cooperate in this endeavor rather than continue their appellate contest over the preliminary injunction. At any rate, we think the District Court had an obligation to stay its hand until it had sufficient facts to warrant at least a determination that it probably had jurisdiction.

3. The District Court did find that Southern has sought, through its pat-

the absence of such a finding, we do not think the District Court was authorized to enjoin "contract violations." The doctrine discussed above in effect elevates the concept of exhaustion of administrative remedies to a jurisdictional plane in requiring judicial abstention from labor disputes that may only involve interpretive questions reserved for the Adjustment Board. Because we think that there is a strong likelihood that appellants will successfully demonstrate on appeal that the District Court, on the basis of its findings,[4] did not have jurisdiction to restrain the alleged violations of the 1959 and 1965 agreements, and because it is claimed with some show of reason, and not seriously contested, that the court's order would subject the carriers to substantial expense and inconvenience in the interim,[5] we suspend those portions of the District Court's order which purport to require compliance with the 1959 and 1965 agreements.

## II.

As mentioned earlier, paragraph (i) of the District Court's order restrains the appellants from "failing or refusing to meet and treat with the [plaintiff] or to exert every effort in good faith to resolve any disputes which may have arisen or which may arise with the [plaintiff]." Paragraph (h) enjoins appellants from "failing or refusing to recognize the [plaintiff] as the collective bargaining representative of all their employees in the class or craft of Firemen and from

any conduct based on the assumption that any individual Fireman must or should make some request or initiate some action of his own, independent of the [plaintiff], to obtain any qualification or promotion or any other right or privilege provided or secured by the 1959 or 1965 Agreements." These paragraphs were based primarily on the court's findings to the effect that 1) Southern's Vice President for Labor Relations had shown a marked reluctance to meet and talk with the union's representatives or even to answer their letters; and 2) that the railroad had insisted on compliance with grievance procedures in situations where such compliance was impossible and inappropriate.

Section 2 First of the Act, 45 U.S.C. § 152 First, imposes on the carrier, its officers, agents and employees the duty "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." The Supreme Court has held that a federal court may issue an injunction to compel compliance by the employer with the requirements of § 2 First. Virginian Ry. v. System Federation, No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). The language of that section ("all disputes,

---

tern of violation, to change the rates of pay, rules, and working conditions of its Firemen as a class, as embodied in the 1959 and 1965 Agreements, without utilizing or initiating the procedures or following the manner prescribed in either the said Agreements or Section 6 of the Act for change or modification of such Agreements, in violation of Section 2 Seventh of the Act.

This finding, however, amounts to little more than the court's ultimate conclusion that a "major" dispute was present. (In this respect, it is significant that it is found in the Conclusions of Law rather than the court's Findings of Fact.) It provides no indication whether the judge's conclusion was erroneously based simply

on his view that the contract, as interpreted by him, had been violated, or correctly premised on a finding that the railroad's claimed defenses were so utterly without substance as to warrant an inference of bad faith.

4. The transcript of the testimony before the trial court is not available for consideration in connection with this motion to stay.

5. What the plaintiff union stresses is that the inconvenience and expense to the carriers is far outweighed by the substantial impairment, from the stay of the injunction, to the interest of the union and the class of firemen to be hired and promoted.

whether arising out of the application of such agreements or otherwise") leaves little doubt that it applies to "minor" as well as "major" disputes. We therefore conclude that the appellants have not made a "strong showing" that they are likely to prevail, on appeal, on the question whether the trial court abused its discretion in imposing the requirements of paragraphs (h) and (i). Accordingly, we decline to suspend the operation of those two paragraphs.