**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**AMERICAN FEDERATION OF RAILROAD POLICE, INC., et al., Defendants.**

**Civ. A. No. 85–696.**

United States District Court, District of Columbia.

June 11, 1985.

Harold Henderson, Jr., Christopher M. Klein, Joanna L. Moorehead, C. Ann Courtney, Washington, D.C., for plaintiff.

Erick F. Larsen, Hauppauge, N.Y., Raoul L. Carroll, Washington, D.C., for defendants.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This case now is before this Court on plaintiff's motion for judgment on the pleadings or summary judgment on its complaint and to dismiss defendant's counterclaim, defendant's opposition thereto and cross-motion for summary judgment, as well as on defendant's motion for a preliminary injunction and plaintiff's opposition thereto.

The plaintiff, National Railroad Passenger Corporation (Amtrak), an intercity railroad passenger service, was organized pursuant to the Rail Passenger Service Act of 1970, 45 U.S.C. § 501 *et seq.* Accordingly, labor disputes must be handled in accordance with the Railway Labor Act. 45 U.S.C. § 546(b). The defendant, American Federation of Railroad Police, Incorporated (AFRP), is the recognized collective bargaining representative of Amtrak's police employees.

On August 1, 1979, Amtrak and AFRP's predecessor union executed a collective bargaining agreement establishing rates of pay, rules and working conditions for the police employees. That agreement was modified on December 16, 1982.

The underlying dispute in this case arises out of a disagreement between the parties regarding certain police work associated with the commuter rail operations of the relatively newly-created New Jersey Transit Rail Operations, Inc. (NJT). On Janu-

ary 1, 1983, NJT began operating its trains over the Northeast Corridor railroad lines owned by Amtrak between Trenton, New Jersey, and Penn Station in New York City. This trackage right arises from a series of contracts between NJT and Amtrak entered into pursuant to Section 402(a) of the Rail Passenger Service Act, 45 U.S.C. § 562(a). The work force needed to operate NJT's trains, including conductors, trainmen, engineers, police officers, and all other necessary personnel is provided by NJT. Additionally, the station located at Newark which previously was owned by Amtrak was purchased from it by NJT. NJT took title to the station on or about May 2, 1984.

The first objection to NJT operations came from AFRP in May 1984, when a grievance was filed with the Director of Labor Relations for Amtrak, alleging that the presence of NJT police officers on the NJT commuter trains operating on Amtrak's trackage amounted to a breach of the Amtrak/AFRP collective bargaining agreement. Numerous other grievances were filed by AFRP which raised the same alleged violation of Rule 4(A) of the collective bargaining agreement (scope clause). Rule 4(A), the clause of the collective bargaining agreement specifying the scope of the work which is to be performed by AFRP, states:

> A. These rules shall govern the hours of service and working conditions of all employees below the rank of Captain engaged in the work of the craft and class of Police Officers and, except as specifically provided herein, all such work of said craft or class shall be performed exclusively by employees subject to the scope of this Agreement, regardless of time devoted to its performance.

Those grievances ultimately were deemed to be without merit by the Corporate Director of Labor Relations for Amtrak.

AFRP's ultimate objection was raised as a result of two arrests made by NJT police officers while riding on NJT's commuter trains on February 23 and 24, 1985. The suspects were taken off the trains at Newark and Elizabeth, New Jersey, respectively. AFRP, in accord with its earlier position, argued that the arrests, subsequent booking, and all other work incident to the arrests of those suspects was within the scope of Amtrak police work. Basically, AFRP's position was that under the scope clause of the collective bargaining agreement, Amtrak police were entitled to ride NJT's trains and perform police duties on them. Amtrak, adhering to its earlier conclusion, found AFRP's allegations to be without merit. AFRP responded to this finding through the initiation of a "blue flu." By the evening of February 27, 1985, numerous Amtrak police officers had called in sick, left work sick, and commenced picketing at various Amtrak facilities.

On February 27, 1985, anticipating picketing, Amtrak filed a verified complaint along with an application for a temporary restraining order and a motion for a preliminary injunction. At about 10:00 p.m. on February 27, this Court granted the plaintiff's motion for a temporary restraining order on an ex parte basis. A hearing on the temporary restraining order was held on February 28, 1985, at which argument from counsel for all parties was heard. This resulted in the issuance of a temporary restraining order which prevented AFRP from inducing or engaging in any picketing, self help or disruptive behavior in any manner interfering with Amtrak's business operations. On March 1, 1985, that Order was extended upon the consent of AFRP's counsel. The plaintiff's motion for a preliminary injunction was granted, without opposition, on March 26, 1985.

■ As noted, this case is governed by the Railway Labor Act. In applying that Act, the Court first must determine whether the underlying controversy in this case constitutes a "major" or a "minor" dispute. *See Elgin, Joliet and Eastern Railway Co. v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945). This determination dictates the proper administrative procedures that the parties must adhere to for resolution of the dispute as well as this Court's authority to

intervene in the controversy. *Local 553, Transport Workers v. Eastern Air Lines, Inc.,* 695 F.2d 668, 674 (2d Cir.1983).

Basically, major disputes are those arising from the initial formation of a new agreement or from the negotiation process in attempting to alter the terms of an existing agreement. *Elgin, Joliet and Eastern Railway Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); *Southern Railway Co. v. Brotherhood of Locomotive Firemen & Enginemen,* 384 F.2d 323 (D.C.Cir.1967). Minor disputes, on the other hand, relate to the interpretation or application of an existing agreement.

AFRP's argument seems to be that Amtrak's sale of its Newark station to NJT, along with NJT's recently acquired trackage rights over a portion of Amtrak's Northeast Corrider, is a unilateral attempt by Amtrak to amend the terms of the existing collective bargaining agreement. Thus, AFRP argues that this dispute is major in nature. Amtrak counters by arguing that Rule 4(A) of the agreement does not give AFRP the right to perform work for third parties who happen to be on Amtrak's property. Accordingly, asserts Amtrak, the police work performed by NJT personnel on NJT trains and at the Newark station does not violate Rule 4(A).

> The law is clear that
>
> where the railroad asserts a defense based on the terms of the existing collective bargaining agreement, the controversy may not be termed a "major" dispute unless the claimed defense is so obviously insubstantial as to warrant the inference that it is. raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements. [*Southern Railway Co. v. Brotherhood of Locomotive Firemen and Enginemen,* 384 F.2d 323, 327 (D.C.Cir.1967).]

■ The parties' relationship is governed and defined by an existing collective bargaining agreement. It is a section of that agreement, Rule 4(A), that once defined, interpreted, and applied will determine the validity of AFRP's claim. The very claim raised by AFRP is based on their expansive interpretation of that clause. Rule 4(A) makes no mention of AFRP's right to perform police work on trains owned by carriers other than Amtrak which happen to be rolling on Amtrak trackage. Therefore, Amtrak's reference to Rule 4(A) as a defense to its actions can hardly be said to be "obviously insubstantial." It is clear that the dispute in this case relates to the interpretation and application of an existing agreement. Accordingly, the dispute is unquestionably minor in nature.

■ The grievance and arbitration procedures set out in the Railway Labor Act for minor disputes are mandatory. The Act places an enforceable obligation upon carriers and unions to settle all minor disputes through the grievance resolution procedure established in the Act. *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). The procedures to be followed require the parties to attempt settlement; failing in this, the dispute must be referred to the appropriate adjustment board or special board of adjustment (Public Law Board). 45 U.S.C. § 153(i). That adjustment board has exclusive jurisdiction to resolve the minor dispute; district courts may not adjudicate the merits of such issues. *Local 553, Transport Workers v. Eastern Air Lines, Inc.,* 695 F.2d at 675. However, it is well within the district courts' jurisdiction to issue an injunction, both to prevent strikes in order to preserve the minor dispute for the adjustment board's consideration and as a method by which to compel compliance with the procedures established by the Railway Labor Act. *Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). The anti-injunction limitations placed on federal courts by the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, give way when, as in the instant case, injunctive relief is the only practical, effec-

tive means by which to enforce the duties imposed by the Railway Labor Act.

■ The Court finds that there is no genuine issue as to any material fact and that Amtrak is entitled as a matter of law to judgment on its motion for a permanent injunction. Fed.R.Civ.P. 56. The findings made by the Court in its March 26, 1985, Preliminary Injunction order remain true. The defendants, and each of them, are intent to and will engage in picketing and self-help in violation of the Railway Labor Act. The only way to prevent this occurrence is by an order continuing to enjoin such action. It is clear that without such an order such acts will occur causing immediate and irreparable injury, loss and damage, in the way of cancelled and delayed railroad service, to both Amtrak and the traveling public. There is no adequate remedy available at law and injunctive relief must be granted. Accordingly, plaintiff's motion for a summary judgment on its complaint, which seeks a permanent injunction, is granted. Fed.R.Civ.P. 56, 65; *see also Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921 (D.C.Cir.1958).

■ Lastly, the Court considers defendants' motion for a preliminary injunction. That motion seeks to have the disciplinary proceedings brought by Amtrak against those participating in the February 27, 1985, strike stayed. The motion by defendants is based on their counterclaims as contained in their answer. Disciplinary proceedings against Amtrak police are governed by the collective bargaining agreement in accord with the Railway Labor Act. The method by which to institute such proceedings, to bring an investigation, and the rights of appeal are governed by the agreement. Accordingly, there is no question but that this dispute is minor. As such, the appropriate adjustment board has primary and exclusive jurisdiction over disciplinary matters between AFRP members and Amtrak. The propriety of the disciplinary charges must be decided, in the first instance, by the adjustment board; this Court is without jurisdiction to enjoin the disciplinary proceedings in the instant case. *See Local 1477 United Transportation Union v. Baker,* 482 F.2d 228 (6th Cir. 1973). Accordingly, AFRP's motion for a preliminary injunction is denied.

An appropriate order accompanies this Memorandum Opinion.

## ORDER

This matter is before the Court on cross-motions for summary judgment, and on defendants' motion for a preliminary injunction and on plaintiff's opposition thereto. For reasons stated in the accompanying Memorandum Opinion, filed by the Court this date, it hereby is

ORDERED, that plaintiff's motion for summary judgment seeking a permanent injunction is granted. The defendants, and each of them, their lodges, divisions, locals, officers, agents, employees, and representatives and all persons acting in concert or participating with them are permanently enjoined from authorizing, calling, inducing, conducting, permitting, continuing in, or engaging in, any picketing, self-help, or disruptive behavior in a manner interfering with Amtrak's business operations. It hereby further is

ORDERED, that defendants' motion for a preliminary injunction is denied. It hereby further is

ORDERED, that the subject matter of this case is referred to the appropriate adjustment board for resolution of the underlying minor dispute. It hereby further is

ORDERED, that the case is dismissed. SO ORDERED.