**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**Civ. A. No. 87–0403–LFO.**

United States District Court, District of Columbia.

May 16, 1988.

See also, 663 F.Supp. 230.

Joseph Guerrieri, Jr., John A. Edmond, Guerrieri, Edmond & James, Washington, D.C., for plaintiff.

Elliot H. Shaller, Dow, Lohnes & Albertson, Washington, D.C., Eugene R. Scheiman, Baer Marks & Upham, New York City, for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, International Association of Machinists and Aerospace Workers ("IAM"), is the certified collective bargaining representative of employees of Trans World Airlines in the craft or class of mechanics and related employees and passenger service employees. Defendant Trans World Airlines ("TWA") is a Delaware corporation, headquartered in New York City. IAM and TWA are parties to a collective bargaining Agreement that is effective from January 3, 1986 to January 3, 1989. Plaintiff alleges that defendant violated the Railway Labor Act ("the Act"), 45 U.S.C. §§ 152, 156, by unilaterally implementing a comprehensive new Drug and Alcohol Policy on February 15, 1987. The case is at issue on plaintiff's motion for summary judgment and defendant's motion to dismiss or, alternatively, for summary judgment.

### I.

The collective bargaining Agreement currently in effect between TWA and IAM cites safety as a central concern of both the airline and its employees. Article 1(a) of the Agreement states:

The purpose of this Agreement is, in the mutual interest of the Company and the

employees, to provide for the operation of the services of the Company under methods which will further, to the fullest extent possible, *the safety of air transportation,* the efficiency of operation, and the continuation of employment under conditions of reasonable working hours, proper compensation, and reasonable working conditions. It is recognized by this Agreement to be the duty of the Company and the employees to cooperate fully, both individually and collectively, for these purposes.

Article 1(a) of Agreement between IAM and TWA (emphasis added). Exhibit A to Affidavit of James R. Cato ("Cato Affidavit"), filed with defendant's motion to dismiss or, alternatively, for summary judgment.

Article 2(b) of the IAM–TWA Agreement provides that TWA can manage its work force by reasonable rules and regulations:

Employees covered by this Agreement shall be governed by all reasonable rules, regulations, and orders previously or hereafter issued by the Company which are not in conflict with the terms and conditions of this Agreement and which have been made available to the affected employees prior to becoming effective.

*Id.* Article 2(b) goes on to state, however, that "[n]othing in these rules or regulations and/or this Agreement shall be construed to limit or deny to any employee herein covered any rights or privileges to which he may be entitled under the provisions of the Railway Labor Act, as amended, or to deny him recourse to any action he might have pursuant to any other applicable Federal statute." *Id.* In Article 11(d)(4) of the Agreement, "[t]he Union recognizes the right of the Company supervisors to manage and supervise its work force of employees, individually or collectively in the normal course of work." *Id.* In addition, Article 3(c) of the Agreement provides that "[a]ll matters not covered by this Agreement or the Railway Labor Act, as amended, shall remain exclusively and without limitation within the prerogative of Management." *Id.*

Since 1969, TWA's General Personnel Regulations have addressed the use of drugs or alcohol by TWA employees with the following prohibition:

Reporting for work under the influence of liquor or drugs or the unauthorized introduction, possession or use of liquor or drugs on company premises is prohibited.

TWA Management Policy and Procedure Manual: General Personnel Regulations ¶ A(2)(d) (March 5, 1969), Exhibit B to Cato Affidavit. This prohibition currently appears as Rule 3 in TWA's Rules of Conduct. TWA Management Policy and Procedure Manual: Rules of Conduct and Personnel Regulations ¶ B(3) (June 27, 1984), Exhibit C to Cato Affidavit. While there is a dispute between the parties about whether TWA conducted drug or alcohol testing prior to February 1987, it is undisputed that TWA has enforced Rule 3 through the sensory observation of TWA supervisors. *See* discussion *infra* at 935–36, 936–37.

The 1969 Rules of Conduct also contained a provision prohibiting off-duty conduct by TWA employees that might embarrass the company or affect an employee's efficiency on duty. More specifically, the 1969 Rules of Conduct provided that:

Employees will not, by their actions either on or off duty, cause the company to be subjected to annoyance, embarrassment or abuse.

.    .    .    .    .

No employee will be permitted to engage in outside activity which affects his availability for duty or efficiency on duty, restricts his ability to transfer to other points on the TWA system or embarrasses the company directly or by implication. No employee may, without prior consent, engage in outside activity which results in remuneration if such activity is related directly to his TWA position.

TWA Management Policy and Procedure Manual: General Personnel Regulations ¶¶ A(2)(a), (h) (March 5, 1969), Exhibit B to Cato Affidavit. These prohibitions of off-duty conduct that might embarrass the company were, however, unilaterally with-

drawn by TWA in the mid–1970s. *Compare* TWA Management Policy and Procedure Manual: General Personnel Regulations (April 18, 1975) *with* TWA Management Policy and Procedure Manual: General Personnel Regulations (April 10, 1974), Exhibit A to Affidavit of Charles J. Thibaudeau ("Thibaudeau Affidavit"), filed with defendant's reply in further support of its motion to dismiss or, alternatively, for summary judgment. They do not appear in the current Rules of Conduct and Personnel Regulations dated June 27, 1984. Exhibit C to Cato Affidavit.

On August 26, 1976, TWA, together with IAM and six other labor organizations signed a "Joint Policy Statement" regarding "Special Health Services" for the treatment of TWA employees with drug or alcohol problems. *See* Exhibit B to Declaration of William O'Driscoll ("O'Driscoll Declaration"), attached to plaintiff's motion for summary judgment. According to the Joint Statement, TWA employees and immediate family members who need and want help with problems such as alcoholism and drug abuse "will be given the same consideration as those with other illnesses." *Id.* The Joint Statement continues: "It is the goal of TWA and the associated labor organizations to help those individuals who develop such problems by providing for consultation and treatment to prevent their conditions from progressing to a degree where they cannot live and work effectively." *Id.* While voluntary diagnosis and treatment is encouraged, the Joint Statement underscores that "[t]his policy, and subsequent related procedures, are not intended to supplant the normal disciplinary process or in any way to block any employee's legitimate access to appropriate grievance procedure." *Id.*

On February 15, 1987, defendant TWA implemented a comprehensive Drug and Alcohol Policy ("Policy") which explicitly addresses off-duty drug use by TWA employees and sets forth the criteria by which TWA employees may be required to undergo drug or alcohol testing. Although the Policy was circulated to IAM in early January 1987, the Union's requests to negotiate the terms of the Policy were denied.

IAM's Statement of Material Facts as to Which There is no Genuine Dispute ¶¶ 13–17; Defendant's Statement Pursuant to Rule 108(h) in Opposition to Plaintiff's Motion for Summary Judgment ¶¶ 13–17.

TWA's Policy begins as follows:

It is the policy of the management of TWA to protect the health and safety of employees and the traveling public by insuring that all employees are fit for duty while on the job. Employee involvement with alcohol or drugs can adversely affect the work environment, job performance and safety whether such use is on or off duty. Therefore, the on or off duty use of unlawful drugs, reporting for work or working while impaired by, or under the influence of, alcohol, controlled substances or any other drug, or possession on work premises of alcohol, controlled substances, or any other drug *are expressly prohibited.*

TWA Drug and Alcohol Policy, Exhibit H to O'Driscoll Declaration. With respect to alcohol, the Policy states that "[e]mployees found drinking or possessing alcohol on the job or reporting to work under the influence of or impaired by intoxicants will be subject to discharge." *Id.* With respect to drugs, the Policy goes further and prohibits the use of illegal drugs whether on or off duty: "Employees who use, distribute, or possess unlawful drugs or controlled substances while on or off duty will be subject to discharge." *Id.*

The Policy requires applicants for positions with TWA to undergo pre-employment drug screening by urinalysis. Existing employees may be tested if there is a "reasonable suspicion" that the employee is "currently under the influence of, or impaired by, alcohol, a controlled substance or other drug." *Id.* Under this provision, "reasonable suspicion" exists when a supervisory employee can document "specific personal observations concerning the appearance, behavior, speech or body odors of the employee." *Id.* That observation may include:

—drinking alcohol or using unlawful drugs or other controlled substances.

—any on-duty accident or incident which results in personal injury or property damage.

—slurred speech

—unsteady gait

—unsafe actions

—odor of alcohol

—inability to perform routine tasks

—disorientation and confusion

—erratic behavior

*Id.* Under the Policy, an employee's refusal to submit to a request for testing raises a presumption of intoxication and/or drug usage; such refusal also constitutes insubordination and provides grounds for discharge. *Id.* A confirmed positive test is grounds for discharge.

TWA employees may make use of TWA's Special Health Services policy, which approaches alcohol and drug usage as treatable health problems, so long as they obtain treatment "before their health, safety, and work performance are affected." *Id.* The Special Health Services are not available, however, to employees in a "job jeopardy status." *Id.*

## II.

Plaintiff contends that TWA's unilateral implementation of its February 1987 Drug and Alcohol Policy gives rise to a major dispute under the Railway Labor Act, 45 U.S.C. §§ 151, 152, 156, made applicable to airlines by 45 U.S.C. § 181, and that TWA must therefore exhaust the bargaining procedures set forth in Sections 2 and 6 of the Act, 45 U.S.C. §§ 152, 156. Plaintiff seeks an injunction restoring the *status quo ante* as it existed prior to TWA's implementation of its February 1987 Policy pending exhaustion of those procedures.

■ Under the Railway Labor Act, disputes between carriers and their employees are categorized either as major disputes or minor disputes, with important procedural consequences. Major disputes arise out of the formation of collective bargaining agreements or unilateral attempts to change existing agreements by securing new rights with respect to rates of pay, rules, or working conditions. *Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945), *aff'd on rehearing*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). A dispute is major if a party to a collective bargaining agreement unilaterally amends or alters the agreement in such a way that the contractual justification for the change is "obviously insubstantial." *Southern Railway Co. v. Brotherhood of Locomotive Firemen & Enginemen*, 384 F.2d 323, 327 (D.C.Cir.1967). Major disputes are subject to negotiation in accordance with procedures set forth in the Railway Labor Act, 45 U.S.C. § 156, and the *status quo ante* may be enforced by injunction pending exhaustion of those procedures.

■ Minor disputes, in contrast, involve the interpretation or application of existing collective bargaining agreements. *Elgin*, 325 U.S. at 723 & n. 16, 65 S.Ct. at 1289 & n. 16; *Southern Railway Co.*, 384 F.2d at 327. Minor disputes are subject to compulsory and binding arbitration before an adjustment board. 45 U.S.C. § 153 (railroads); 45 U.S.C. § 184 (airlines). Federal courts have no subject matter jurisdiction over minor disputes where the plaintiff has not first pursued arbitral remedies under the Railway Labor Act, *Southern Railway Co.*, 384 F.2d at 328; *International Association of Machinists & Aerospace Workers v. Aloha Airlines, Inc.*, 776 F.2d 812, 815 (9th Cir.1985), and judicial review of the arbitral decision is limited. *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978).

Plaintiff contends that TWA's Drug and Alcohol Policy instituted on February 15, 1987 gives rise to a major dispute because it alters the collective bargaining agreement between IAM and TWA governing drug and alcohol use by employees, which consists of Rule 3 and the Joint Policy Statement. Memorandum of Points and Authorities in Support of Plaintiff IAM's Motion for Summary Judgment ("Plaintiff's Mem.") at 18. Rule 3, first promulgated by TWA in 1969, prohibits "*reporting for work under the influence* of liquor or drugs or the unauthorized introduction, possession or use of liquor or drugs *on*

*company premises."* Exhibit C to Cato Affidavit (emphasis added). Plaintiff contends that, by virtue of longstanding practice from 1969 to the present, the parties have an implied agreement that Rule 3 prohibits *on-duty* drug abuse and is enforced through sensory observation. *See Brotherhood of Maintenance of Way Employees v. Chicago & North Western Transportation Co.,* 827 F.2d 330, 334 (8th Cir.1987) (rule prohibiting use, possession, or being under the influence of alcohol or drugs on the job "by virtue of the parties' longstanding and recognized custom and practice, has become an implied term in the agreement of the parties.") Under the longstanding implied agreement between TWA and IAM, plaintiff argues that *off-duty* conduct of TWA employees involving drugs or alcohol was not regulated by Rule 3 and employees were not subject to discipline for such off-duty conduct *unless* they reported to work "under the influence" of liquor or drugs. Plaintiff's Mem. at 15. Plaintiff contends, moreover, that sensory observation was the agreed method by which Rule 3 was enforced, and that TWA "never conducted testing of employees' urine or blood prior to the implementation of the February 1987 policy." *Id.* at 23; *see also* Plaintiff IAM's Memorandum of Points and Authorities in Opposition to TWA's Motion to Dismiss, or Alternatively, for Summary Judgment, and in Further Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Opp.") at 16–18; Transcript of Hearing on Cross Motions for Summary Judgment on April 11, 1988 at 8.

Plaintiff argues that TWA's 1987 Drug and Alcohol Policy unilaterally changed the implied collective bargaining agreement between TWA and IAM concerning Rule 3 and that there is no arguable basis in the way Rule 3 has been implemented since 1969 for contending that the 1987 Policy is an interpretation or application of it. In plaintiff's view, TWA's 1987 Policy raises a major dispute in two respects. First, the 1987 Policy now subjects TWA employees to discharge for *off-duty* conduct involving the use, possession, or distribution of drugs *regardless* of whether such conduct affects job performance. Plaintiff's Mem. at 20–

21; Plaintiff's Opp. at 15. Second, plaintiff contends, TWA's unilateral implementation of blood and urine testing of TWA employees alters the existing agreement between the parties on sensory enforcement of Rule 3, and also invades the privacy of TWA employees and poses a new threat to their job security. Plaintiff's Mem. at 15–16, 22–23; Plaintiff's Opp. at 16–18.

Plaintiff argues that blood or urine testing of TWA employees was not performed prior to February 1987. Plaintiff's Mem. at 23; Plaintiff's Opp. at 16; O'Driscoll Declaration ¶ 8. In support of this contention, plaintiff points out that TWA proffers no evidence that any TWA employee actually took a blood or urine test administered by TWA prior to February 1987. Plaintiff's Opp. at 16–17. When asked in a deposition whether he knew "of any single incident or instance when a blood test was given" prior to February 1987 to determine whether an employee was under the influence of alcohol, James R. Cato, TWA's Staff Vice–President of Labor Relations–Ground, responded:

> I can't tell you—I know there are instances where employees were *requested* to take blood tests or breath analyzers. I do not know—I do not recollect one way or the other, whether they took them. But I know there were instances where we offered and intended to test, if they were willing.

Cato Deposition at 45–46, Exhibit M to Cato Affidavit (emphasis added). In his affidavit, Cato reiterates that "in some instances" TWA requested employees to take a test to establish whether the employee was working under the influence of drugs or alcohol. Cato Affidavit ¶ 9. Plaintiff argues, however, that Cato's testimony "cannot establish a practice of disciplining employees for failure to take a test prior to the implementation of the February 1987 program." Plaintiff's Opp. at 18 n. 4; *see also* IAM's Rule 108(h) Statement of Facts in Dispute in Opposition to TWA's Motion to Dismiss, or Alternatively, for Summary Judgment ¶ 2. The affidavit of Ralph P. Craviso filed by TWA refers only to the "opportunity" given to TWA employees to

take "breathalyzer tests" to exonerate themselves from charges of working under the influence of drugs or alcohol. Craviso Affidavit ¶ 15.

Plaintiff stresses that TWA now imposes "mandatory" testing on its employees in that refusal to take a test subjects them to discharge. Plaintiff's Opp. at 18; Plaintiff IAM's Supplemental Exhibit to be Attached to the Declaration of Al Calhoun. Plaintiff also points out that the General Counsel of the National Labor Relations Board concluded that implementation of drug testing is a mandatory subject of bargaining under the National Labor Relations Act. Plaintiff's Mem. at 24–25; Attachment 3 to IAM's Statement of Material Facts as to Which There is no Genuine Dispute.

Plaintiff also argues that the Joint Policy Statement of August 1976, which established treatment opportunities for TWA employees with drug and alcohol problems, constitutes a collective bargaining agreement between TWA and IAM and therefore cannot be altered unilaterally. Plaintiff's Mem. at 18–19. The Joint Statement provides that TWA employees who want help with respect to alcohol and drug abuse "will be given the same consideration as those with other illnesses." Exhibit B to O'Driscoll Declaration. Plaintiff states that the Joint Policy Statement was the subject of negotiations between TWA and IAM under Section 6 of the Railway Labor Act. Plaintiff's Mem. at 19. More specifically, plaintiff contends that the Joint Policy Statement was the result of a Section 6 notice dated September 26, 1975 proposing, among many other things, an "alcohol and drug abuse plan." Id.; see Exhibit A to O'Driscoll Declaration.

Defendant opposes plaintiff's motion for summary judgment and moves to dismiss the case or, alternatively, for summary judgment. Defendant argues that this dispute is a minor dispute over the interpretation and application of the IAM–TWA collective bargaining agreement and thus should be resolved through the arbitral process. Defendant contends, therefore, that the case should be dismissed because this court lacks subject matter jurisdiction over the dispute. Alternatively, TWA argues that it should be granted summary judgment because it has not violated the Railway Labor Act as plaintiff alleges.

Defendant's contention that the Drug and Alcohol Policy of February 1987 created a "minor dispute" rests on its claim that the Policy is "nothing more than a refinement in the enforcement by TWA of its existing employment rules" which have long prohibited TWA employees from using alcohol or drugs on the job or working under their influence. Memorandum of Points and Authorities of Defendant Trans World Airlines, Inc. in Support of its Motion to Dismiss or, Alternatively, for Summary Judgment ("Defendant's Mem.") at 3. In defendant's view, "[t]hose rules have long been recognized by all concerned as being critical to the safe operation of the airline and are also consistent with the collective bargaining agreement and past practices in effect between TWA and its unions." Id.

Defendant argues that the TWA–IAM collective bargaining Agreement currently in effect highlights safety as a central concern and gives TWA the inherent right to manage its work force by issuing reasonable rules, regulations, and orders. Id. at 4–6; see Articles 1(a) and 2(b) of Agreement between IAM and TWA, Exhibit A to Cato Affidavit. TWA also points to Article 11(d)(4) of the Agreement in which "[t]he Union recognizes the right of the Company supervisors to manage and supervise its work force of employees, individually or collectively in the normal course of work." Id.; see also Article 3(c) of the Agreement, id.

Defendant views its February 1987 Policy as a reasonable refinement of its method of enforcing Rule 3, informed by the fundamental concern for safety set forth in Article 1(a) of its Agreement with IAM. Defendant points out that it explicitly has prohibited TWA employees from reporting to work under the influence of drugs or alcohol or using drugs or alcohol on the job since 1969. Defendant's Mem. at 6. According to defendant, prior to February 1987, this policy was implemented by TWA

managers who identified employees whom they reasonably suspected were under the influence of drugs or alcohol based on their subjective observation of the employee's behavior. TWA states that, "in some instances", such employees were requested to take a test to establish whether or not they were working under the influence of drugs or alcohol, and those employees who refused could be "subject to discipline, up to and including discharge." *Id.* at 7; Cato Affidavit ¶ 9 and Exhibit M; Craviso Affidavit ¶ 15. In defendant's view, its February 1987 Policy is simply a "more formalized method of enforcing its existing rules prohibiting employee misuse of drugs and alcohol." Defendant's Mem. at 9.

Defendant disputes plaintiff's characterization of the drug and alcohol testing procedures established in February 1987 as "vague and malleable." On the contrary, TWA stresses that those procedures require "reasonable suspicion" before an employee can be tested, and do not require testing of "accident victims" as plaintiff alleges. Memorandum of Points and Authorities of Defendant Trans World Airlines, Inc. in Opposition to the Plaintiff's Motion for Summary Judgment and in Further Support of its Motion to Dismiss or, Alternatively, for Summary Judgment ("Defendant's Opp.") at 22–24; Memorandum from James R. Cato, dated May 6, 1987, Exhibit I to O'Driscoll Declaration. TWA emphasizes that its testing is not random and that confirmatory testing is required to verify initially positive results. As defendant contends:

> [P]ractically speaking, unless an employee is observed using drugs or alcohol, or his conduct or appearance give rise to a reasonable suspicion that he is affected by alcohol or drugs, there would be no reasonable suspicion to test that employee.
>
> In short, the terms of the Policy Statement merely refined the detection and enforcement methodology of TWA's rules regarding drug and alcohol abuse.

Defendant's Opp. at 21–22.

Defendant argues further that there is no evidence that the Joint Policy Statement of August 1976 was the result of collective bargaining negotiations following a Section 6 notice from IAM. *Id.* at 15–18. In any event, defendant contends, the Joint Policy Statement relied on by plaintiff is not relevant to this case because the Statement does not supplant the normal disciplinary rules by which TWA has regulated drug and alcohol abuse. *Id.* at 13; Defendant's Mem. at 14–16.

To further bolster its claim that it is simply refining and interpreting an existing policy, TWA contends that it has a long history of regulating the *off-duty* conduct of its employees, including drug and alcohol abuse. TWA points to past company rules and regulations dating from as early as 1946 that prohibit off-duty conduct that would cause embarrassment to TWA or impair an employee's efficiency on the job. Defendant's Opp. at 9–13; Cato Affidavit ¶¶ 16–18, Exhibits B, I, J, K. Defendant admitted in oral argument, however, that such rules were unilaterally withdrawn by TWA many years ago and do not appear in the current Rules of Conduct issued in 1984. *See* Exhibit C to Cato Affidavit. Moreover, defendant points to only one concrete case prior to February 1987 in which an employee was discharged for misconduct concerning drugs, but that employee used TWA facilities and telephones to conduct his drug transactions so he was not strictly speaking "off-duty." *See* Exhibit B to Defendant's Statement Pursuant to Rule 108(h) in Opposition to Plaintiff's Motion for Summary Judgment (case of T. Bonanno); Reply Memorandum of Points and Authorities of Defendant Trans World Airlines, Inc. in Further Support of its Motion to Dismiss or, Alternatively, for Summary Judgment ("Defendant's Reply") at 7.

TWA also contends that it has a past practice of unilaterally changing its General Personnel Rules and Rules of Conduct and thus has the right unilaterally to extend Rule 3 to prohibit off-duty conduct involving drugs. Defendant's Reply at 9–16; Defendant's Mem. at 10–13. TWA admits, however, that the rule concerning drugs and alcohol promulgated in 1969 has never been changed prior to February

1987. Defendant's Mem. at 10–11; Defendant's Supplemental Rule 108(h) Statement ¶ 16. Moreover, although TWA stresses that it has made numerous changes since 1946 in its rules governing off-duty conduct by TWA employees that would embarrass TWA or interfere with an employee's efficiency on the job, Defendant's Mem. at 11, the last time such a rule appeared in TWA's Rules of Conduct was in 1974. *See* Exhibit A to Thibaudeau Affidavit.

The parties each cite two categories of cases in other circuits as germane to this dispute. One category involves disputes over railroad drug detection and testing policies. *See Brotherhood of Locomotive Engineers v. Burlington Northern Railroad Co.*, 838 F.2d 1102 (9th Cir.1988); *Brotherhood of Locomotive Engineers v. Burlington Northern Railroad Co.*, 838 F.2d 1087 (9th Cir.1988); *Brotherhood of Maintenance of Way Employees v. Burlington Northern Railroad Co.*, 802 F.2d 1016 (8th Cir.1986). Plaintiff recently drew the Court's attention to *Railway Labor Executives Association v. Consolidated Rail Corporation*, 845 F.2d 1187 (3rd Cir. 1988) and *International Brotherhood of Teamsters v. Southwest Airlines Co.*, 842 F.2d 794 (5th Cir.1988). The other category of cases involves disputes over regulation of off-duty conduct involving drugs. *See Brotherhood of Maintenance of Way Employees v. Chicago and North Western Transportation Co.*, 827 F.2d 330 (8th Cir. 1987); *Watts v. Union Pacific Railroad Co.*, 796 F.2d 1240 (10th Cir.1986). The cases are fact-specific and the parties disagree over their implications for this case.

### III.

The issue before the Court is whether the dispute between IAM and TWA concerning TWA's February 1987 Drug and Alcohol Policy is a major dispute or a minor dispute under the Railway Labor Act. Under the law of this circuit, where a carrier "asserts a defense based on the terms of the existing collective bargaining agreement, the controversy may not be termed a 'major' dispute unless the claimed defense is so obviously insubstantial as to warrant

the inference that it is raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements." *Southern Railway Co.*, 384 F.2d at 327. "Only if ... the contract were not reasonably susceptible to the carrier's contention would this be a § 6 dispute proper for a 'status quo' injunction." *International Brotherhood of Electrical Workers v. Washington Terminal Co.*, 473 F.2d 1156, 1172 (D.C.Cir.1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1530, 36 L.Ed.2d 195 (1973) (emphasis omitted) (quoting *United Transportation Union v. Burlington Northern, Inc.*, 458 F.2d 354, 357 (8th Cir.1972)). In contrast, "where the position of one or both of the parties *is expressly and arguably predicated on the terms* of the agreement, as illuminated by long-standing practices, the question of whether the position is well taken involves a minor dispute." *International Brotherhood of Electrical Workers*, 473 F.2d at 1172 (quoting *Switchmen's Union v. Southern Pacific Co.*, 398 F.2d 443, 447 (9th Cir.1968)). The Railway Labor Act vests exclusive jurisdiction over resolution of minor disputes in the Adjustment Board, and "where the dispute is even arguably a minor one that administrative body should have the first opportunity to evaluate and decide it." *International Brotherhood of Electrical Workers*, 473 F.2d at 1173.

In using these standards to determine whether TWA's Drug and Alcohol Policy raises a major or minor dispute, it is necessary to differentiate two components of the Policy, each of which IAM claims gives rise to a major dispute, namely, (1) TWA's policy of testing its employees based on "reasonable suspicion" that they are impaired by or under the influence of drugs or alcohol and (2) TWA's policy of subjecting employees to discharge for off-duty conduct involving the use, possession, or distribution of unlawful drugs.

■ With respect to its policy of blood or urine testing based on reasonable suspicion, TWA has offered a justification based on its collective bargaining agreement with IAM, both express and implied, that is not "obviously insubstantial." *Southern Rail-*

*way Co.*, 384 F.2d at 327. The Agreement in effect between the parties makes explicit reference to furthering "the safety of air transportation", Article 1(a), and provides that TWA employees "shall be governed by all reasonable rules, regulations, and orders" issued by TWA "which are not in conflict with the terms and conditions of this Agreement ..." Article 2(b). Exhibit A to Cato Affidavit. TWA has had a long-standing policy since 1969, in which IAM has acquiesced, of prohibiting its employees from reporting to work under the influence of drugs or alcohol or using drugs or alcohol on the job. This prohibition, which appears as Rule 3 in TWA's current Rules of Conduct, has been enforced, with IAM acquiescence, through sensory observation of the behavior and appearance of TWA employees by TWA supervisors. Rule 3, enforced through such sensory observation, has become an implied term in the agreement between the parties by virtue of their longstanding practice.

TWA's February 1987 policy of testing based on "reasonable suspicion" is arguably predicated on the parties' agreement that enforcement of Rule 3 depends on *specific observation of individual behavior and appearance* suggesting that an individual is under the influence of drugs or alcohol. TWA has not instituted a policy of random drug testing or a policy of testing all employees on duty after an accident. *Compare Brotherhood of Locomotive Engineers v. Burlington Northern Railroad Co.*, 838 F.2d 1087 (9th Cir.1988) (generalized mandatory drug testing raises major dispute). TWA has clarified that, to the extent testing is triggered by the occurrence of an on-duty accident causing personal injury or property damage alone, only employees suspected in good faith of being at *fault* may be tested. Memorandum from James R. Cato, dated May 6, 1987, Exhibit I to O'Driscoll Declaration.

While IAM has argued strongly that TWA has no prior practice of blood or urine testing under Rule 3 that rises to the level of an implied agreement, TWA's claimed contractual justification for its testing Policy is not "obviously insubstantial." *Southern Railway Co.*, 384 F.2d at 327. Plain-

tiff acknowledges that TWA has enforced Rule 3 through the sensory observation of TWA supervisors with IAM's acquiescence. TWA's February 1987 Policy limits testing to those employees whose conduct or appearance, based on specific observation of documented behavior by TWA supervisors, raises a "reasonable suspicion" that the employee is impaired by or under the influence of drugs or alcohol while on the job. Testing under these circumstances is arguably an interpretation or application of Rule 3 and thus constitutes a minor dispute. *See Brotherhood of Maintenance of Way Employees v. Burlington Northern Railway Co.*, 802 F.2d 1016, 1023 (8th Cir. 1986) ("What the railroad has done now is to add a more refined step, the urine test, to confirm the observation of the supervisor. Since the test can be required only upon some showing that the employee may be impaired, the ground rules between the union and the railroad have not changed significantly.")

Like the 8th Circuit case, TWA's testing Policy is based on particularized suspicion, triggered by sensory observation of a supervisor, that an employee is under the influence of drugs or alcohol on the job. *Id.* at 1023. In contrast, the 5th Circuit case cited by plaintiff involves a far more expansive drug testing program in which particularized suspicion is not necessarily a factor. That program, for example, provides for testing of mechanics after a vehicular accident if management so desires, regardless of whether human responsibility or fault was a factor in the accident. Moreover, under that program, employees whose jobs require a physical examination are obligated to take a drug test on the basis of no suspicion whatsoever. *International Brotherhood of Teamsters v. Southwest Airlines Co.*, 842 F.2d 794, 806 (5th Cir.1988).

The Joint Policy Statement of August 1976 referred to by plaintiff does not alter the conclusion that TWA's testing Policy gives rise to a minor dispute. The Joint Statement does not supplant the disciplinary rules by which TWA has regulated drug and alcohol abuse by its employees.

By its own terms, the Joint Statement is "not intended to supplant the normal disciplinary process ..." Exhibit B to O'Driscoll Declaration.

■ The second aspect of TWA's February 1987 Policy challenged here by IAM is TWA's pronouncement that employees who use, distribute, or possess unlawful drugs or controlled substances off-duty "will be subject to discharge." Exhibit H to O'Driscoll Declaration. Unlike TWA's drug testing policy which is based on "reasonable suspicion" that an employee is under the influence of, or impaired by, drugs or alcohol *on the job*, TWA's policy that off-duty conduct involving drugs, without more, can subject an employee to termination is a departure that constitutes a major dispute. It represents a formal change in the agreement between the parties rather than a reinterpretation or application of it. *See Brotherhood of Maintenance of Way Employees v. Chicago & North Western Transportation Co.*, 827 F.2d 330 (8th Cir. 1987) (regulation of off-duty drug use, possession or sale raises major dispute).

The justification claimed by TWA for this aspect of its February 1987 Policy is insubstantial and is not reasonably based in its collective bargaining agreement with IAM. TWA conceded in oral argument that its rules regulating off-duty employee conduct that might subject the company to embarrassment or impair an employee's efficiency on duty were *withdrawn* by TWA many years ago and do not appear in TWA's current Rules of Conduct. TWA also acknowledges that the rule prohibiting drug and alcohol abuse—Rule 3—has *not* been changed since it was introduced in 1969. TWA thus has simply not established a "past practice" or implied agreement that gives it the right to change Rule 3 unilaterally to subject its employees to discharge for off-duty conduct involving the use, possession or distribution of drugs. Such a change in Rule 3 gives rise to a major dispute subject to the procedures set forth in the Railway Labor Act at 45 U.S.C. §§ 152, 156. As the 8th Circuit found in a similar case:

... the agreement of the parties (including any terms necessarily implied as a result of established past practices and working conditions) is not reasonably susceptible to the [carrier's] proposed interpretation whereby it has the right to unilaterally extend its operating rules to regulate off duty use, possession, or sale of illegal drugs in the manner contemplated by the amendment to Rule G [the existing rule].

*Brotherhood of Maintenance of Way Employees*, 827 F.2d at 336. Taken to its logical conclusion, TWA's argument that it has the right to regulate unilaterally the off-duty conduct of its employees would purport to justify investigating the private lives of TWA employees, in the name of safety and managerial prerogative, without regard to the effect of the employees' off-duty conduct on their job performance. TWA's February 1987 Policy does not, for example, limit disciplinary consideration of an employee's off-duty drug use to its probativeness of on-the-job impairment. The Policy does not address, the parties have not addressed, and therefore the Court does not address the issue of whether the Policy makes, or could make, evidence of off-duty drug use a basis for "reasonable suspicion" of on-duty use or impairment that would justify testing to determine whether an employee was in violation of Rule 3.

TWA's policy of treating off-duty drug use, possession, or distribution, without more, as a basis for discharging TWA employees is a departure from the existing agreement between the parties represented by Rule 3. It gives rise to a major dispute subject to the procedures set forth in Section 6 of the Railway Labor Act, 45 U.S.C. § 156. Accordingly, an accompanying Order enjoins implementation of that aspect of TWA's February 1987 Policy pending exhaustion of those procedures.

## ORDER

For reasons stated in the accompanying Memorandum, it is this 16th day of May, 1988, hereby

**941**

ORDERED: that plaintiff's motion for summary judgment should be, and is hereby, GRANTED IN PART and DENIED IN PART; and it is further

ORDERED: that defendant's motion to dismiss should be, and is hereby, GRANTED IN PART and DENIED IN PART; and it is further

ORDERED, ADJUDGED and DECLARED: that defendant's drug testing policy based on "reasonable suspicion" instituted on February 15, 1987 gives rise to a minor dispute subject to arbitration under the Railway Labor Act; and it is further

ORDERED, ADJUDGED and DECLARED: that defendant's policy of subjecting its employees to discharge for off-duty use, possession or distribution of illegal drugs or controlled substances gives rise to a major dispute subject to the procedures set forth in Section 6 of the Railway Labor Act, 45 U.S.C. § 156; and it is further

ORDERED: that defendant is ENJOINED, pursuant to 45 U.S.C. § 156, from implementing, with respect to any TWA employees represented by plaintiff IAM, its policy of subjecting employees to discharge solely for off-duty use, possession or distribution of illegal drugs or controlled substances pending exhaustion of the procedures set forth in the Railway Labor Act, 45 U.S.C. § 156.